# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

MAYRA FABERLLE-HERNÁNDEZ,

　　Plaintiff,

　　v.

TRIPLE-S VIDA, INC.,

　　Defendant.

CIVIL NO. 16-2127 (PAD)

## OPINION AND ORDER

Delgado-Hernández, District Judge.

　　Plaintiff Mayra Faberlle-Hernández initiated this action against defendant Triple-S Vida, Inc. pursuant to the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 et. seq. ("ERISA"), seeking payment of long-term disability benefits under the group long-term disability insurance plan of her former employer Puerto Rico Telephone Company-Claro's ("PRTC") (Docket No. 20). Before the court is defendant's "Motion for Summary Judgment" (Docket No. 31), which plaintiff opposed (Docket No. 35). Defendant replied (Docket No. 36), and plaintiff sur-replied (Docket No. 39). For the reasons below, the motion for summary judgment is GRANTED and the case DISMISSED.

### I.　　SUMMARY JUDGMENT STANDARD

　　Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is "genuine" if it could be resolved in favor of either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). It is "material" if it

potentially affects the outcome of the case in light of applicable law. Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004). A genuine issue of material fact must be built on a solid foundation, a foundation constructed from materials of evidentiary quality. García-González v. Puig-Morales, 761 F. 3d 81, 87 (1st Cir. 2014). Conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative will not suffice to ward off a properly supported motion for summary judgment. Nieves-Romero v. U.S., 715 F.3d 375, 378 (1st Cir. 2013).

## II. FACTS[1]

Plaintiff was an employee and secretary of PRTC from October 16, 1986 to April 16, 2013. See, "Statement of Uncontested Material Facts" ("SUMF"), Docket No. 32, ¶ 8.[2] She states that she can no longer work as secretary because she suffers from physical and psychological conditions that preclude her from performing the material and substantial duties of her work or those of any

---

[1] Except otherwise noted, the facts included in this section are drawn from the well-pleaded facts asserted in the amended complaint (Docket No. 20) and the parties' Local Rule 56 submissions (Docket Nos. 31, 32, 35, 35-1, 36, and 39). Local Rule 56 is designed to "relieve the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute." CMI Capital Market Inv. v. González-Toro, 520 F.3d 58, 62 (1st Cir. 2008). It requires a party moving for summary judgment to accompany its motion with a brief statement of facts, set forth in numbered paragraphs and supported by specific citations to the record, that the movant contends are uncontested and material. Local Rule 56(b) and (e). The opposing party must admit, deny, or qualify those facts, with record support, paragraph by paragraph. Id. 56(c) and (e). While the district court may "forgive" a violation of Local Rule 56, litigants who ignore the rule do it "at their peril." Mariani-Colón v. Dep't of Homeland Sec. ex rel. Chertoff, 511 F.3d 216, 219 (1st Cir. 2007).

[2] Plaintiff agrees with most facts, admitting statements 1-18, 23-25, 27-33, and 38-41. See, Docket No. 35-1, "Opposition to Statement of Facts in Support of Motion for Summary Judgment." She qualifies or denies the remaining statements at 19-22, 26, and 34-37. Id. However, her responses are argumentative (i.e. citing as support the arguments included in her response to the motion for summary judgment), and more importantly, fail to make reference to the record or supporting evidence. Id. Thus, the court disregards the noncompliant opposing statements, accepting defendant's facts as stated. See, Cabán Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007)("In the event that a party opposing summary judgment fails to act in accordance with the rigors that [Local Rule 56] imposes, a district court is free, in the exercise of its sound discretion, to accept the moving party's facts as stated").

gainful employment (Docket No. 20, p. 2).[3] On November 26, 2013, she submitted a documented claim for disability benefits to the defendant as plan administrator. SUMF ¶¶ 1, 2, 4, 9.[4] On April 22, 2014, defendant referred the file to a clinical consultant to determine plaintiff's reasonable limitations of activities based on the documents that she submitted with her claim. SUMF ¶ 17. On April 25, 2014, the consultant concluded that plaintiff was not functionally impaired, and even considering her history of chronic pain, that she was nonetheless able to carry out her duties in the PRTC. SUMF ¶ 19.[5] Further, in a subsequent consultation with another physician, Dr. Miguel Velázquez (board certified in family medicine and neuromusculoskeletal medicine), on May 5, 2014, both the clinical consultant and Dr. Velázquez found that, with minimal restrictions and limitations, plaintiff could perform a sedentary occupation. SUMF ¶¶ 21-22.[6]

After these findings, on May 8, 2014, defendant referred plaintiff's file to a vocational expert to determine whether plaintiff was able to work as secretary and could occasionally reach

---

[3] Plaintiff alleges she suffers from "fibromyalgia, right knee [o]steopenia, [c]hondromalacia, low bone mass, C4-C5 and C5-C6 central disc protrusions, C3-C4 and C6-C7 bulging discs, diffuse chronic DJD and early DDD changes, L4-L5 and L5-S1 early degenerative disc disease and right facet join inflammatory changes, L2-L3 bilateral facet joint inflammatory changes, bilateral L5-S1 irritability with increased insertional activity in the paraspinal muscles, left C5-6 radiculopathy with active denervation in the paraspinal muscles, sacral radiculopathy. . . . [m]ayor [d]epression, [s]evere and [r]ecurrent without psychotic features . . . . irregular pattern in her sleep, lack of concentration[] . . . feels worthless, hopeless, irritable, [and] lack[s] appetite . . . ." Id. at pp. 1-3.

[4] As administrator, defendant has discretionary authority to interpret the terms of the plan and determine eligibility for benefits. SUMF ¶ 3. And to qualify for disability benefits, the beneficiary must meet the definition of "disability" or "disabled," as defined in the policy. SUMF ¶ 5.

[5] The consultant criticized the lack of objective findings to support plaintiff's previous diagnoses of fibromyalgia, depression, and anxiety. SUMF ¶ 19. On May 2, 2014, the consultant updated her report to address the additional documentation received from plaintiff's psychiatrist, Dr. Luis Dorta, but found that the additional information did not support a finding that plaintiff was functionally impaired. SUMF ¶ 20.

[6] Particularly, the clinical consultant and Dr. Velázquez found that plaintiff could: (1) lift and carry up to 10 pounds; (2) sit for 8 hours a day, with short periods of rest and to change positions; (3) stand for 3 hours every 8 hours of a workday; (4) walk for 1 hour every 8 hours of a workday; (5) occasionally bend at the waist and reach above her shoulder; and (5) perform simple grasps, pulls, pushes and fine manipulation without restriction. SUMF ¶ 22.

above her shoulder. SUMF ¶ 23. On May 12, 2014, the vocational expert responded to both inquiries in the affirmative. SUMF ¶ 24.

On May 19, 2014, defendant sent a letter to plaintiff stating that her application for disability benefits was denied because she did not comply with the definition of "disability" for the relevant period of August 17, 2013 to August 14, 2014, listing the evidence and referral findings received and considered in the process. SUMF ¶¶ 25-26.[7] On August 14, 2014, plaintiff appealed the decision, and defendant referred plaintiff's file to Dr. Philippe Chemaly (certified in physical medicine and rehabilitation) and Dr. Yanira Olaya (certified in psychiatry and forensic psychiatry). SUMF ¶ 30, 33.

Dr. Olaya determined that the intensity and frequency of plaintiff's treatment for her fibromyalgia and depression was inconsistent with the alleged severity of these conditions, concluding that the clinical data before her did not support a finding that plaintiff was impaired to work due to mental illness, as her mental conditions were benign. SUMF ¶ 35.[8] In the same way, Dr. Chemaly found that there was insufficient evidence to suggest that plaintiff was impaired to work. SUMF ¶ 36.[9]

---

[7] The evidence included: (1) a report prepared by Dr. Dorta on December 17, 2013; (2) a report prepared by Dr. Luis Olivari, rheumatologist, on December 11, 2013; (3) an assessment of functional capacity prepared by Dr. Olivari on December 11, 2013; (4) a supplementary assessment of mental health prepared by Dr. Dorta on December 17, 2013; (5) plaintiff's medical records from the Corporation of the State Insurance Fund of Puerto Rico ("SIF"); (6) plaintiff's medical records with Dr. Dorta; and (7) plaintiff's medical records with Dr. Olivari. See, Docket Nos. 32-12, pp. 40-43; 32-13, pp. 1-7.

[8] In her evaluation, Dr. Olaya stated that she took into account the "results from the mental health status tests performed by the medical providers treating the claimant," having received and reviewed ample documentation pertaining to plaintiff's medical and mental conditions. See, Docket No. 32-14, pp. 12-19 (listing documents received for review).

[9] Dr. Chemaly considered, among others, (1) physician statements completed by: (i) Dr. Juan Menchaca, internal medicine, dated 10/30/93 through 11/4/93; (ii) Dr. Luis Faura Clavell, PM&R, dated 6/16/98; (iii) Dr. Olivari, dated 7/12/13 and 12/11/13; (iv) Dr. Dorta, dated 9/6/13 and 12/17/13 and others undated; (2) progress notes, correspondence, and/or consultations completed by multiple providers including (i) the SIF, dated 4/12/94 through 6/10/94 and others illegibly dated; (ii) Dr. Clavell, dated 2/16/05; (iii) "Medicina de Familia y Geriatria;" (iv) Dr.

Finally, defendant reviewed the totality of plaintiff's file, and on December 15, 2014, denied her appeal, stating that the evidence did not demonstrate a physical or mental disability that would preclude her from working as a secretary. SUMF ¶¶ 37-38. On June 17, 2016, plaintiff initiated the instant action, essentially alleging that defendant's determination of non-eligibility for disability benefits did not comply with its own policy and thus violated Section 1132(a) of ERISA (Docket Nos. 1, 20).

### III. DISCUSSION

In general, courts review the denial of benefits under ERISA plans *de novo*. See, Ortega-Candelaria v. Johnson & Johnson, 755 F.3d 13, 20 (1st Cir. 2014)(so noting). Where the plan grants the plan administrator or another fiduciary the discretionary authority to construe the terms of the plan or to determine a participant's eligibility for benefits, however, courts apply a deferential standard of review, upholding the administrator's decision unless arbitrary, capricious, or an abuse of discretion. Id. Under this standard, "the question is not which side [courts] believe is right, but whether the administrator had substantial evidentiary grounds for a reasonable decision in its favor." Id. Evidence is deemed substantial "when it is reasonably sufficient to support a conclusion." Id.

Although a plan administrator may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician, administrators do not have to automatically grant special weight to the opinion of a claimant's chosen provider. Id. (citing in part Medina v. Metro. Life Ins. Co., 588 F.3d 41, 46 (1st Cir. 2009)("A plan administrator is not

---

Wadir Nairn, prosthodontics, dated 6/28/07; (v) Dr. Carmen Velázquez, PM&R; (vi) Dr. Lillian Miranda Claudio, rheumatology; (vii) Dr. Edgar Hernández, neurology, dated 5/20/13 and 8/21/13; and (viii) unknown clinic; (3) diagnostics laboratories; and (4) medication lists and/or pharmacy records. See, Docket No. 32-14, pp. 20-27.

obligated to accept or even to give particular weight to the opinion of a claimant's treating physician"). Thus, courts may not impose a discrete burden of explanation on plan administrators when they credit reliable evidence that conflicts with a treating physician's evaluation. Id. In the presence of conflicting evidence, it is entirely appropriate for a reviewing court to uphold the decision of the entity entitled to exercise its discretion. Id. at 20-21.

In this light, defendant contends the evidence did not demonstrate plaintiff was disabled, and correspondingly, that it acted reasonably and within its discretion in denying plaintiff's claims for disability benefits under the plan (Docket No. 31). Plaintiff counters defendant was unreasonable because previous reports and evaluations unequivocally revealed that she was in physical pain and sufficiently limited in movement so as to be precluded from performing any kind of work (Docket No. 35, pp. 8-11).[10] And she maintains defendant improperly concluded that she did not have any mental conditions, when according to her psychiatrist she did suffer from mayor depression. Id. at pp. 12-13.

As plan administrator, defendant was under no obligation to afford any particular consideration to the medical opinions or reports of plaintiff's primary physicians or other medical providers. See, Medina, 588 F.3d at 46 (so noting). Even so, there is no evidence that it ignored those opinions and reports, or plaintiff's assertions of pain and other physical or mental

---

[10] Plaintiff contends that defendant should have given proper consideration to: (1) a report prepared by the SIF in 1995 (Docket No. 32-7, p. 18); (2) medical orders for physical therapy, an initial evaluation, and therapy progress notes by Dr. Carmen Velázquez Ríos (physical medicine and rehabilitation), and consent forms signed by plaintiff (Docket No. 32-5, pp. 28-44); (3) a sonoarthrography report by Ana M. Gómez (musculoskeletal radiologist) (Docket Nos. 32-8, p. 3); (4) a clinical referral (Docket No. 32-12, p. 20); (5) a "Functional Capacity Evaluation" by Dr. Olivari (Docket No. 32-1, p. 81), an evaluation that in plaintiff's view demonstrates that her physical conditions limited her ability to perform her "material and substantial duties" as secretary, and although she could occasionally have the capacity for movement, such capacity varied; (6) uncited progress notes by neurologist Dr. Edgar Hernández, which purportedly show that she had pain in "18 trigger points, out of 18 points" and thus "suffers from generalized pain over all her body, including her hands," which she could only use occasionally; and (7) a PRTC document at Docket No. 32-8, p. 22. See, Docket No. 35, pp. 10-11.

conditions.[11] It considered them. But given that "[a]nalyzing disability claims plainly requires expertise," Leahy v. Raytheon Co., 315 F.3d 11, 16 (1st Cir. 2002), it referred plaintiff's claim to outside medical experts, and reasonably relied on their findings. That the evidence plaintiff pointed to may contradict defendant's conclusions is not enough by itself to render its decision arbitrary and capricious. See, Vlass v. Raytheon Employees Disability Tr., 244 F.3d 27, 30 (1st Cir. 2001)(so noting). The court's inquiry is not directed at determining which side was right, but whether the administrator-defendant had "substantial evidentiary grounds for a reasonable decision . . . ." Ortega-Candelaria, 755 F.3d at 20. Such was the case here.

## IV. CONCLUSION

Defendant's experts reviewed plaintiff's medical records and concluded that: (1) the records were not sufficient to show that plaintiff was disabled due to physical or mental conditions or otherwise unable to work as a secretary; and (2) plaintiff could perform such work with minimal restrictions. Plaintiff has not placed the court in a position –and it therefore sees no reason– to depart from those findings, which relied on substantial evidence and thus supported the decision that defendant reached. See, Medina, 588 F.3d at 46 (1st Cir. 2009)(holding that findings by an independent medical examiner may provide the requisite substantial evidentiary grounds for a reasonable decision to deny benefits).[12] On that basis, the motion for summary judgment (Docket No. 31) is GRANTED and the case DISMISSED. Judgment shall be entered accordingly

---

[11] Regarding plaintiff's allegation that defendant unreasonably concluded that she did not have any mental conditions (Docket No. 35, pp. 12-13), she is wrong. Defendant did not squarely state that plaintiff lacked any mental conditions. Rather, Dr. Olaya concluded that whatever mental conditions plaintiff had were "essentially benign," did not substantially affect her capacity to work, and in consequence, did not sustain a finding of disability by reason of mental illness. See, Docket Nos. 31, pp. 13-14; 32-14, pp. 12-19, 36.

[12] In her sur-reply, plaintiff makes a last ditch effort to suggest that defendant somehow abused its discretion in the decision to deny her appeal because Dr. Chemaly and Dr. Olaya had no communication with her primary physicians before rendering their medical opinions (Docket No. 39). But it has been admitted as fact that they contacted and left

**SO ORDERED.**

In San Juan, Puerto Rico, this 28th day of September, 2018.

                                                s/Pedro A. Delgado Hernández
                                                PEDRO A. DELGADO HERNÁNDEZ
                                                United States District Judge

---

messages with those physicians. SUMF ¶¶ 34, 36. In any event, the argument fails on the merits, because just as an administrator is not obligated to place particular weight on the opinion of a claimant's treating physician, it too does not have to "wait indefinitely for an opinion that is not forthcoming," and thus may proceed to review whatever information it has available "so long as that information provides a sufficient basis to make a reasonable determination." Medina, 588 F.3d at 47. Therefore, it is irrelevant whether Dr. Chemaly and Dr. Olaya made sufficient efforts at contacting plaintiff's primary physicians, for they were entitled to review the record before them, which, as noted above, was sufficient for a reasoned determination.